IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-02725-MSK-STV

ERIK T. ROBINSON,

    Plaintiff,

v.

ACG PROCESSING, and
ROBERT BASS,

    Defendants.

---

## ORDER RE: MOTION TO DISMISS

---

**THIS MATTER** comes before the Court on Defendants' Fed. R. Civ. Pro. 12(b)(6) Motion to Dismiss (**#30**) and the supporting and opposition briefing thereto (**#31**, **#38**).

### I.     Statement of Jurisdiction

The instant lawsuit asserts seven claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), and one claim arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). Thus the Court exercises jurisdiction under 28 U.S.C. § 1331.

### II.     Relevant Alleged Facts

The Court offers a summary of the relevant allegations set forth in the First Amended Complaint[1] (**#24**). Further elaboration is made as necessary as part of the Court's analysis.

---

[1] Plaintiff Erik Robinson is proceeding as a *pro se* plaintiff. In such cases, the Court will construe *pro se* pleadings and other filings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

The First Amended Complaint alleges that from April 2016 through June 2017, Mr. Robinson received multiple phone calls from debt collectors seeking payment of a 2008 payday loan, a debt that he disputes. (*Id.* at ¶¶ 6, 8, 14-17.) These calls fit a "general pattern" in which Mr. Robinson was told that a process server and/or the police were en route to his home or workplace, and he was threatened with being sued or arrested if he did not pay the debt. (*Id.* at ¶ 6.) Whenever Mr. Robinson received a call from debt collectors, he demanded validation of the debt as required under the FDCPA, but he has never received that verification. (*Id.*) In April 2016, the callers self-identified as the "Aaron Cooper Group" or "ACG Services," but beginning in August 2016, different names were used. (*Id.* at ¶¶ 9,10.)

Initially, Mr. Robinson sued D2 Management, but then settled such claims. As part of the settlement, D2 Management provided unspecified "materials" or "records" to Mr. Robinson, that "indicate that the prior debt collector is a firm called ACG Processing," which is owned by Robert Blass. (*Id* at¶20) Mr. Robinson then amended his Complaint to assert claims against ACG Processing and Robert Blass.

Defendants ACG Processing and Robert Blass move to dismiss the First Amended Complaint on a variety of grounds – some raised in the Motion to Dismiss, and others raised in the Reply. They contend that: 1) the First Amended Complaint does not contain any allegations that ACG Processing or Mr. Bass specifically engaged in any conduct that is a violation of the FDCPA; 2) the First Amended Complaint does not allege that Mr. Robinson submitted written notice of a disputed debt, which is a requirement to triggering any FDCPA validation obligations; 3) at least some of the FDCPA claims in the First Amended Complaint are barred by the one-year FDCPA statute of limitation; 4) the First Amended Complaint fails to allege what sort of computer or automated "robo-dialing" device was used to call Mr. Robinson with

adequate specificity to state a TCPA claim; and 5) the First Amended Complaint does not sufficiently allege that Mr. Robinson received the calls in question on a cellular or wireless phone, as required under the TCPA.

### III. Analysis

#### A. Fed. R. Civ. Pro. 12(b)(6) Legal Standard

In considering a motion to dismiss pursuant to Rule 12, the Court is limited to the factual allegations of the pleadings – here, the First Amended Complaint. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001). The Court accepts all well-pleaded allegations as true and views such allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

A claim is subject to dismissal unless it is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments that are mere legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. Then the Court takes the remaining, well-pleaded factual contentions, and treating them as true, determines whether such facts support a cognizable claim that is "plausible" as compared to merely being "conceivable" or "possible." What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," are not sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B.     Conduct by ACG Processing and Mr. Bass that violates the FDCPA**

To state a claim for violation of the FDCPA, Mr. Robinson must allege facts from which the court can infer that the elements of a claim can be shown.  To prove a violation of the FDCPA, a plaintiff must establish that a debt collector violated some provision of the applicable statute. 15 U.S.C. § 1692 *et seq.* Generally, this requires some factual allegation from which the Court can infer that: 1) the plaintiff is a consumer; 2) the defendant is a debt collector; and 3) the defendant engaged in conduct prohibited by FDCPA.  The Defendants move to dismiss Claims 1 through 7 brought under the FDCPA for failure to allege facts identifying prohibited conduct.

1.     Conduct by ACG Processing

ACG Processing generally argues that the First Amended Complaint fails to specifically identify it by name.  ACG Processing is technically correct, but that does not prevent the statement of a sufficient claim against it.

Paragraph 9 of the First Amended Complaint alleges that Mr. Robinson received calls from someone purporting to be from "ACG Services" and/or "Aaron Cooper Group" in April 2016.  These references are slightly different from the name, ACG Processing.  However, Paragraph 21 alleges that documents obtained from D2 Management "indicate that the prior debt collector is a firm called ACG Processing…."  Reading the two allegations together, and construing them most favorably to Mr. Robinson, it is fair to say that he contends that the debt collection calls of which he complains all were made by ACG Processing. Although ACG Processing may dispute its involvement with these calls, this is sufficient to identify ACG Processing for purposes of the FDCPA claims.

2. Conduct by Mr. Bass

With regard to claims against Mr. Bass, the conclusion is different. The only allegation in the First Amended Complaint involving Mr. Bass is a single sentence in which the pleading states that he "apparently" owns an entity or entities identified as "ACG Processing," "Aaron Cooper Group," and/or "ACG service." (**#24**, at ¶ 21.) There is no allegation that Mr. Bass actually *did* anything apart from that alleged ownership.

That is not sufficient to state an FDCPA claim against Mr. Bass under any of the theories articulated by Mr. Robinson. The FDCPA governs the conduct of a "debt collector." It defines such a debt collector to be "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" or "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

The sole allegation concerning Mr. Bass – that he owns ACG Processing or a similar-named entity – does not meet the definition of a debt collector. Thus, there is no claim stated against Mr. Bass under the FDCPA.

C. **The FDCPA Statute of Limitation**

The First Amended Complaint covers telephone calls made over an extended period of time – April 2016 through June 2017. This action was filed on November 14, 2017. ACG Processing contends that the FDCPA claims are time-barred by the FDCPA's one-year statute of limitation. *See* 15 U.S.C. § 1692k(d).

Generally, the assertion of a bar by application of a statute of limitation is an affirmative defense upon which the defendant has the burden of proof. But it can be determined on a motion to dismiss brought pursuant to Fed. R. Civ. Pro. 12(b)(6) if the dates alleged in the complaint make clear that the right sued upon has been extinguished. *See, e.g., Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 Fed. App'x 411, 413 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)).

ACG focuses upon allegations in the First Amended Complaint referring to debt collectors with names similar to ACG Processing. ACG notes that these occurred only in April 2016, and thus to be actionable must have been asserted in an action filed by April 2017. But ACG reads the First Amended Complaint too narrowly. As noted, when construed liberally, the allegations against ACG could include all the collection calls made from April 2017 through June 2017.

As to those, calls made more than a year before this action was filed – November 14, 2017 – are barred.[2] That leaves, those calls that occurred after November 14, 2016 as actionable. According to the First Amended Complaint, there are six calls that are actionable – April 5, 2017 (**#24**, at ¶ 14); April 6, 2017 (*Id.*); April 7, 2017 (*Id.*); May 30, 2017 (*Id.* at ¶ 16); May 31, 2017 (*Id.*) and June 22, 2017 (*Id.* at ¶ 17).

D.   **Sufficiency of allegations for claims as to actionable calls**

Focusing on the specific calls at issue, the Court turns to each type of violation that is alleged.

---

[2] Mr. Robinson makes no argument nor is there anything in the record that suggest that the statute of limitation should be equitably tolled.

1. *First Claim – Violation of 15 U.S.C. § 1692c*

The first claim in the First Amended Complaint alleges that ACG Processing continued to call Mr. Robinson he "ordered" the caller to cease and desist in violation of 15 U.S.C. § 1692c. Section 1692c states in relevant part: "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt…." *Id.* at (c).

The key language in Section 1692c requires a consumer to give *written* notice to a debt collector in order to stop communication. The First Amended Complaint contains no allegation that Mr. Robinson ever gave *written* notice to ACG Processing or any other collector that it should cease communication. Therefore, dismissal is warranted on this claim.

2. *Second Claim – Violation of 15 U.S.C. §§ 1692b(2) and 1692c(b)*

The second claim in the First Amended Complaint alleges that ACG Processing violated 15 U.S.C. §§ 1692b(2) and 1692c(b) by "repeatedly contacting [Mr. Robinson's] family members" and "by informing them that the contact is related to debt collection." (**#24**, at ¶ 27.) Section 1692b(2) prohibits a debt collector who contacts an individual other than the debtor to ascertain the debtor's location from stating "state that such consumer owes any debt." Section 1692c(b) limits those that a debt collector may contact.

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Taken together, then, these provisions limit a debt collector's contacts with third parties solely for the purpose of ascertaining the whereabouts of the debtor and in doing so, the debt collector may not may not disclose that the debtor owes any debt.

The First Amended Complaint mentions calls made to Mr. Robinson's family members twice. It alleges that ACG Processing "repeatedly contacting family members," and it also alleges that "[i]n addition to calling the Plaintiff, [representatives of ACG Processing] often call Plaintiff's father and brother relaying the same ridiculous threats, that they are collecting debt." (*Id.* at ¶ 6). However, the First Amended Complaint contains no allegations of specific calls that were made to his father and brother or the time period in which such calls were made, or most importantly the content of the calls.

While the Court believes that this is a closer call, it ultimately concludes that a mere two references to "repeated" or "often" calls to Mr. Robinson's family members is insufficiently specific to identify calls occurring within the statute of limitations or related to any of the six calls which are actionable. Dismissal of this claim is warranted, as well.

3. *Third Claim – Violation of 15 U.S.C. §§ 1692d and 1692e*

The third claim in the First Amended Complaint alleges that ACG Processing violated 15 U.S.C §§ 1692d(6), 1692e(14), and 1692e(3) by failing to identify itself by its correct name and by pretending to be an attorney. With respect to the first of those, §1692d states in relevant part: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." It further identifies the following as constituting (in relevant part) prohibited harassing conduct: "the placement of telephone calls without meaningful disclosure of the caller's identity." *Id.* at (6). With respect to §1692e, the statute prohibits the use of "false, deceptive, or misleading representation or means" in connection with the collection of a debt, and (in relevant part) it specifically prohibits the

8

following: "The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." *Id.* at (14).  Finally, §1692e specifies that "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney" will be another type of a false, deceptive or misleading representation.  *Id.* at (3).

The First Amended Complaint alleges that the calls made on April 5, 2017, April 6, 2017 and April 7, 2017 were made by an individual representing that he was calling on behalf of "National Information Center," which was representing "Loanpoint USA." (**#24**, at ¶ 14.) It further alleges that the calls made on May 30, 2017 and May 31, 2017 were made by someone claiming to represent "Cardinal Associates," which was calling on behalf of "Knox Financial." (*Id.* at ¶ 16.)  Finally, it alleges that the June 22, 2017 call was made by an individual purporting to be from D2 Management, which was calling on behalf of "Loan Point Financial." (*Id*. at ¶ 17.)  Assuming that the claims based on these calls are brought against ACG Processing, in each instance, a name different than its own was used.  For these calls, then, a claim for violation of §§1692d(6) and 1692e(14) may proceed.  However, none of the six actionable calls involved representations that the caller was an attorney.[3]  Thus this claim is limited to the identified calls and alleged violation of 15 U.S.C §§ 1692d(6) and 1692e(14).

    4.    *Fourth Claim – Violation of 15 U.S.C. § 1692e(5)*

The fourth claim in the First Amended Complaint alleges that ACG Processing communicated a false, deceptive or misleading representation to Mr. Robinson in violation of 15 U.S.C. § 1692e by threatening to take legal action that it legally could not take, such as asserting that he could be arrested or be sued to collect the purported debt in question.  *Id.* at (5).

---

[3] The only call that specifically makes that allegation is one made on August 27, 2016 (*Id.* at ¶¶ 10-13) which is barred by the statute of limitations.

The First Amended Complaint generally alleges that the debt collection calls made to Mr. Robinson "all follow the same general pattern" – that the debt collector who called Mr. Robinson stated "that they are a law firm or mediation firm and that there are process servers and/or police en route to [Mr. Robinson's] home or workplace to serve him with a complaint" (**#24**, at ¶ 6) and that the law firm or mediation firm represented a "client" who threatened "to have [Mr. Robinson] arrested and sued" if the debt was not paid. (*Id.*) With respect to the six actionable calls, however, there are no specific allegations of this type.

Notwithstanding that lack of specificity, and Construing the First Amended Complaint liberally, the general allegations could apply to the six actionable calls creating plausible claims for violation of §1692e(5). The First Amended Complaint alleges that all of the debt collection calls in question – presumably including the ones made in April through June 2017 – followed a common pattern, in which Mr. Robinson was threatened with legal action. That alleged pattern is described in some detail. (*Id.* at ¶ 6.) Nothing in the description of the relevant 2017 calls contradicts this allegation or suggests that such calls were departures from the norm. Thus, this claim for5

5. *Fifth Claim – Violation of 15 U.S.C. §§ 1692e(4), 1692e(5) and 1692c*

The next claim in the First Amended Complaint alleges that ACG Processing misrepresented to both Mr. Robinson and to his family members that nonpayment of his debt would result in his arrest in violation of 15 U.S.C. §§ 1692e(4), 1692e(5) and 1692c. As discussed above, §1692e(5) specifies that threatening to take legal action that cannot be taken is a specific type of false, deceptive or misleading representation. Section 1692e(4) is similar: "The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take

such action." *Id.* Finally, as also discussed above, §1692c generally prohibits debt collectors from contacting any third persons regarding a debtor's debt, except in a number of limited circumstances that are not alleged to be present here.

There is no allegation in the First Amended Complaint that any of the calls made to Mr. Robinson or his family members threatened the seizure, garnishment, attachment, or sale of his property or wages. However, as discussed immediately above, it describes a "general pattern" of calls made to Mr. Robinson that includes arrest threats. Following the reasoning previously applied, the general allegations are liberally construed to apply to the six calls made in April 2017 through June 2017. Therefore, the claim that calls made to Mr. Robinson threatened arrest in violation of §§ 1692e(4) and 1692e(5) will proceed.

However, with respect to the §1692c claim involving calls made to Mr. Robinson's family members, the same analysis as set forth in the discussion of Claim 2 applies. No specific calls to any of Mr. Robinson's family members are alleged to have been made within the applicable limitations period. The First Amended Complaint alleges that each of the six calls made between April and June 2017 were made to Mr. Robinson personally, and not any such family members. Moreover, although the First Amended Complaint does allege that ACG Processing "often call[s] [Mr. Robinson's] father and brother, relaying the same ridiculous threats, that they are collecting a debt, *etc.*," two broad references to "repeated" or "often" calls without identifying any specific calls or even the time period in which they were received is not enough to state a claim regarding those purported calls. Therefore, this claim cannot proceed on claimed violations of §1692c.

6. *Sixth Claim – Violation of 15 U.S.C. § 1692e(7)*

The sixth claim alleges that ACG Processing wrongfully and falsely stated that Mr. Robinson had committed a crime in order to disgrace him in violation of 15 U.S.C. § 1692e(7). Section 1692e(7) identifies "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false" as a specific type of false, deceptive or misleading representation.

Because the purpose of the alleged representation was to embarrass Mr. Robinson, it necessarily must have been made to someone other than Mr. Robinson. But as noted earlier, none of the six actionable calls were made to anyone but Mr. Robinson. In addition, there is no specific allegation that any of the six calls involved a statement indicating that Mr. Robinson committed a crime. Finally, the "general pattern" of the calls (**#24**, at ¶ 6) do not mention anything about Mr. Robinson having committed a crime. To be sure, it alleges that the debt collectors' general practice was to threaten Mr. Robinson with arrest or calling the police, but this falls short of actually stating that he had performed some criminal act, or even that he had engaged in criminal behavior generally. Being arrested or taken into custody does not necessarily mean that one has committed a crime. Therefore, dismissal is warranted with respect to this claim.

7. *Seventh Claim – Violation of 15 U.S.C. 1692g*

The seventh claim alleges that ACG Processing failed to validate Mr. Robinson's debt upon his verbal request in violation of 15 U.S.C. § 1692g. Section 1692g provides in relevant part:

- When a debt collector contacts a debtor, the debt collector must inform the debtor that he or she will have thirty days to notify the debt collector in writing that he or she disputes the debt (in whole or in part), which then obligates the debt collector to verify the debt. 15 U.S.C. § 1692g(a)(4).

- Within five days of the initial contact with the debtor, the debt collector must send the debtor – unless the information is contained in the initial communication – written notice containing a variety of different types of information, including the creditor to whom the debt is owed and the ability to dispute the debt and require verification. *Id.* at (a).

- If the debtor submits written notice that he or she disputes the debt within the thirty day period, the debt collector generally must stop all collection efforts until he or she can verify the debt and mails the debtor documented verification of the debt. *Id.* at (b).

ACG Processing argues that the First Amended Complaint does not allege that Mr. Robinson provided written notice that he disputed the debt and thus the verification requirement was not triggered.

First, it is helpful to note that §1692g(a) creates reciprocal duties for the debt collector and the consumer (debtor). The debt collector must do two things in the first contact or within a short time thereafter – inform the consumer of the 30-day time period in which to notify the collector that the debt is disputed, and send the debtor written notice of information about the debt. Before the collector is obligated to validate the debt, the consumer must give timely written notice that he or she disputes the debt. If the consumer gives that written notice, then the collector must cease collection until the debt is verified and verification is sent to the consumer.

The First Amended Complaint asserts only a general claim that ACG violated §1692g without reference to any specific subsection or subpart, thus it is somewhat unclear what obligation under §1692g that Mr. Robinson contends was not performed. However, some clarity is provided in ¶ 42, which alleges that the collector has "defied repeated verbal requests by Plaintiff to validate the debt." Based on this clarification, and in the absence of any allegations addressing the collectors initial duties, the Court understands the alleged violation to be the collector's refusal to validate the debt after Mr. Robinson disputed it.

The question then becomes whether the First Amended Complaint includes factual allegations, which if true, would have triggered the collector' obligation to verify or validate the debt. It does not. To trigger such obligation, the consumer (debtor) must make a written demand. The First Amended Complaint alleges only that Mr. Robinson was contacted by telephone, and it describes his relatively extensive efforts to try to ascertain the identity of his callers and his oral requests for validation of the debt. (**#24**, at ¶¶ 14-18.)[4] Because it contains no allegation that Mr. Robinson gave the collector *written notice* that he disputed the debt, the collector had no duty to "validate" it. 15 U.S.C. § 1692g(a)(4). Thus, this claim is dismissed.

### E. TCPA Claim

ACG Processing also seeks dismissal the TCPA claim. The elements for proof of a TCPA claim are: 1) a call was placed to the plaintiff's cellular or wireless phone; 2) using an automatic dialing system and/or leaving an artificial or prerecorded message, 3) without prior consent of the plaintiff. *See, e.g., Sartori v. Susan C. Little & Associates, P.A.*, 571 Fed. App'x 677, 682 (10th Cir. 2014). ACG argues that the First Amended Complaint fails to allege facts sufficient to establish the second element – *i.e.*, that the calls received by Mr. Robinson were made using an automatic dialing system. It specifically contends that the First Amended Complaint merely describes these calls as being placed by "robo-dialing computers," and that Mr. Robinson did not explicitly identify any particular device that was used to call him.

In this regard, the TCPA defines an "automatic telephone dialing system" to be: "equipment which has the capacity – (A) to store or produce telephone numbers to be called,

---

[4] There is no allegation that ACG (or the collector) either performed or failed to perform its initial obligations to advise Mr. Robinson of the 30-day time period to dispute the debt or to send him the statement that included written notice of information about the debt. If Mr. Robinson was never provided with the required notice of his right to dispute the debt or the required statement as to the debt, he might be able to assert a violation of 1692g(a)(4) on such grounds.

using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The First Amended Complaint expressly alleges that the debt collection calls received by Mr. Robinson were placed through phones that "use 'robo-dialing' computers to make many calls, which if answered get routed to an available person." (**#24**, at ¶ 7.) While it is slightly ambiguous whether the First Amended Complaint is alleging that the phones actually used that technology when they called Mr. Robinson (as opposed to just using it generally), because he is proceeding *pro se*, the Court will construe the First Amended Complaint liberally to encompass such an allegation. Therefore, the Court understands the First Amended Complaint to allege that Mr. Robinson was called by ACG Processing (or someone on its behalf) multiple times using a phone system that automatically dials randomly- or sequentially-generated numbers, and then immediately routes those calls to a live operator if they are answered on the other end. That is sufficient for the purposes of the TCPA claim in the First Amended Complaint to allege that Mr. Robinson received calls place through an "automatic telephone dialing system," at least at a basic level. No further specificity is necessary at the pleading stage.[5]

Finally, the Court notes that ACG Process raised another TCPA argument for the first time in its Reply brief – that the TCPA claim must fail because the statute in question only applies to calls made to a cellular or wireless phone, and there is no allegation in the First Amended Complaint that this is the type of phone on which Mr. Robinson received the calls in question. This essentially challenges the first element of a TCPA claim set forth above. Because this new argument was made only in the Reply, the Court need not consider it. *United States v. Murray*, 82 F.3d 361, 363 n. 3 (10th Cir. 1996). However, if the Court were to consider the

---

[5] Despite the fact that the First Amended Complaint states that it is seeking $13,500 in statutory damages with respect to the TCPA claim, the relevant statutory provision (47 U.S.C. § 227(b)(3)(B)) provides for only $500 per violation.

argument, it would find it without merit.  Cellular phones have become so ubiquitous that the Court would infer that he received the calls in question on one, especially given Mr. Robinson's *pro se* status.  If discovery produces evidence that Mr. Robinson was called on something other than a cellular phone, ACG Processing can file the appropriate dispositive motion at that time.

## CONCLUSION

Therefore, Defendants' Motion to Dismiss (**#30**) is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** insofar as all claims against Mr. Bass are **DISMISSED, without prejudice.**   It also is **GRANTED** insofar as Claims 1, 2, 6, and 7 against ACG Processing are **DISMISSED, without prejudice**. It is **DENIED** with respect to all other claims against ACG Processing, but such claims are limited as stated herein.

Given the Plaintiff's prior amendment to the Complaint, the Court declines to reflexively authorize further amendment.  If the Plaintiff can address the deficiencies specified herein, within fourteen (14) days, he may file a motion to amend accompanied by an amended complaint with redlined deletions and modifications which the Court will consider in due course.

Dated this 11th day of October, 2018.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge